UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | |
| ) | **CRIMINAL NO. 05-10109-WGY** |
| **JOSE A. RUIZ-MORALES,** ) | |
| **Defendant** ) | |
| ) | |
| ) | |

**GOVERNMENT'S MOTION TO RECONSIDER**
**ORDER SETTING JURY TRIAL ON SENTENCING ENHANCEMENT**

The United States hereby moves this Honorable Court to reconsider its decision to impanel a jury to determine the factual basis for a sentencing enhancement for the defendant based on proof beyond a reasonable doubt. With due respect to the Court, it is the government's position that neither Supreme Court nor First Circuit precedent authorizes such a proceeding. Indeed, the cases require the district court, not a jury, to find the facts relevant to sentencing enhancements, and to do so based on the preponderance of the evidence. The government also submits that the proposed procedure exceeds this Court's authority under the Federal Rules of Criminal Procedure and contravenes the sentencing procedures established by the Sentencing Reform Act and the Sentencing Guidelines. While the Supreme Court's decision in United States v. Booker afforded the district courts greater discretion in sentencing, Booker did not authorize categorical rejection of the procedures established by Congress and the Sentencing Commission.

-1-

The government respectfully requests that the Court reconsider its proposal to impanel a jury for factfinding and schedule a hearing at which the Court will determine sentencing factors on a preponderance of the evidence standard.

## BACKGROUND

The defendant, Jose A. Ruiz-Morales pled guilty on January 9, 2006.  Pursuant to a plea agreement, Ruiz-Morales pled guilty to an information charging him with conspiracy to possess with intent to distribute and to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §846 and possession with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §841(a)(1).   In the agreement, however, Ruiz-Morales reserved his right to contest, at sentencing, whether he possessed a firearm in connection with the offense, which would justify an upward adjustment of the sentence under the Guidelines.   See U.S.S.G. §2D1.1(b)(1).

Ruiz-Morales' counsel indicated that it understood that this plea would mean that the government "will have to persuade your Honor" at sentencing of the facts supporting this enhancement. [1/9/2006:7].[1]  However, the Court explained that it was the Court's "standing order that if [the defendant]'s not going to agree to [the sentencing enhancement] he gets a trial" and that the Court expected

---

[1] Citations to the transcript take the form "[month/day/year: page]."

the government "to prove these things to a jury beyond a reasonable doubt." [1/9/2006:6-7].   The Court later reiterated that point, saying of the firearm enhancement:

> I'm prepared to have that matter submitted to
> a jury and have the jury tell me on proof
> beyond a reasonable doubt whether they agree,
> because I understand that you dispute that
> point, you disagree as to whether a firearm was
> possessed in connection with [the] crime.

[1/9/2006:11].

The Court then conducted a colloquy with Ruiz-Morales regarding the plea and found his plea to be knowing, intelligent and voluntary with respect to the conduct charged in the information. [1/9/2006:23-24].

After accepting the plea, the Court reiterated its intent to afford the defendant a trial on the disputed question of whether Ruiz-Morales possessed a gun.   In response, the government argued that the First Circuit's decision in <u>Yeje-Cabrera</u> confirmed that a trial on this issue was inappropriate.   The Court stated:

> There's nothing . . . in that case that
> prevents me from following these procedures.
> I recognize it's my duty to make these
> determinations    [regarding    sentencing
> enhancements].   I am allowed to enhance the
> fact finding process so that I get a careful
> and precise finding of fact.

[1/9/2006:25]. The government subsequently requested, and the Court granted, permission to submit a brief seeking reconsideration of the Court's proposed procedure. [1/9/2006:26].

## ARGUMENT

In <u>United States v. Booker</u>, 125 S.Ct. 738 (2005) the Supreme Court held that judicial imposition of sentencing enhancements under the mandatory Federal Sentencing Guidelines violated the Sixth Amendment to the United States Constitution. 125 S.Ct. at 755-56. <u>Booker</u> solved this constitutional infirmity by excising two provisions of the Sentencing Act of 1984 (the "Sentencing Act") that made the Sentencing Guidelines mandatory. 125 S.Ct. at 764. By resolving the issue in this manner, the Court left in place the procedures used under the Guidelines, including the calculation of Guidelines sentences by district courts, <u>Booker</u>, 125 S. Ct. at 767 (after <u>Booker</u>, "[t]he district courts, while not bound by the Guidelines, must consult those Guidelines and take them into account when sentencing"), but rendered the resulting calculations advisory with respect to the sentence imposed. The Court's majority expressly rejected as contrary to Congressional purposes an alternative, favored by dissenters, that would have retained the mandatory Guidelines but required sentence-enhancing facts to be proved to a jury beyond a reasonable doubt. <u>Booker</u>, 125 S.Ct. at 759-64, 771-72.

Since <u>Booker</u>, the First Circuit has repeatedly affirmed that the second part of <u>Booker</u>, which made the Guideline's advisory, fully resolved the Sixth Amendment violation the Court identified. <u>See, e.g.</u>, <u>United States v. Perez-Ruiz</u>,421 F.3d 11, 14-15 (1st Cir.

-4-

2005) ("[Under] <u>Booker</u>, judge-made enhancements under the guidelines that result in a sentence greater than the sentence that could be imposed based solely on the facts found by the jury do amount to Sixth Amendment violations if the guidelines are treated as mandatory, but . . . this problem is washed out by treating the guidelines as advisory."); <u>United States v. Antonakopoulos</u>, 399 F.3d 68, 75 (1st Cir. 2005) ("[The <u>Booker</u> error] is not that a judge (by a preponderance of the evidence) determined facts under the Guidelines which increased a sentence beyond that authorized by the jury verdict or an admission by the defendant; the error is only that the judge did so in a mandatory Guideline system."). As a result, the First Circuit has explained, the Guideline sentence calculation should continue to be determined, as it was in the past, by the district court judge applying a preponderance of the evidence standard. "We review the district court's findings of fact, at sentencing, solely to determine whether it committed clear error in ascertaining that the government has established the disputed fact by a preponderance of the evidence." <u>United States v. Green</u>, 426 F.3d 64, 66 (1st Cir. 2005) (citing <u>United States v. Luciano</u>, 414 F.3d 174, 180 (1st Cir. 2005)). The <u>Green</u> court emphasized that the burden on the government to prove enhancements was "not onerous." <u>Id</u> at 67.

The First Circuit has also made clear that imposing any "remedy" beyond that announced by <u>Booker</u> is not only unnecessary,

but "wrong":

> There was a period between <u>Blakely</u> and <u>Booker</u>
> when the district courts were forced to
> predict and improvise. Some courts, as the
> court did here [referring to <u>United States v.
> Green</u>, 346 F.Supp.2d 259 (D. Mass. 2004)]
> predicted wrongly that the Sixth Amendment
> concerns required as a remedy that certain
> issues (for instance, drug quantity) be
> decided by a jury, not a judge. It is now
> well settled that this was wrong; the remedy
> was to make the Guidelines non-mandatory.

<u>United States v. Yeje-Cabrera</u>, 430 F.3d 1, 17 (1st Cir. 2005). In
doing so, the First Circuit has squarely rejected the view that a
district court could properly decide sentencing facts by adopting
the facts found by a jury beyond a reasonable doubt:

> The district court's <u>Apprendi</u> rationale for
> limiting its consideration of drug quantity
> was simply a wrong guess as to the direction
> the law would take. The district court was
> not "constrained" by the jury's verdict, as it
> thought it was, to finding less than 500 grams
> of cocaine. <u>Instead, it could (and should)
> have found Olivero responsible for the amount
> of cocaine established by a preponderance of
> the evidence against him</u> – though of course,
> the ultimate sentence may not exceed the
> statutory maximum of 20 years.

<u>Yeje-Cabrera</u>, 430 F.3d at 23 (emphasis supplied); <u>see also United
States v. Picanso</u>, 333 F.3d 1, 26 (1st Cir. 2003) (noting that it
"would clearly be legal error" for a district court simply to adopt
a jury's factfinding in imposing a sentence). <u>Yeje-Cabrera</u> thus
confirms the vitality of the First Circuit's pre-<u>Booker</u> precedent

establishing the district court's obligation, under the Sentencing Act and Guidelines, to sentence a defendant based on its own "independent finding[s]" of fact and to do so "regardless of [a] jury's actual, or assumed beliefs." Picanso, 333 F.3d at 26 (quoting Edwards v. United States, 523 U.S. 511, 514 (1998)).

The First Circuit is not alone in concluding that Booker did not alter the sentencing procedures set forth in the Guidelines or "change the burden of persuasion." McReynolds v. United States, 397 F.3d 479, 481 (7th Cir.), cert. denied, 538 U.S. 914, 965, 966 & 125 S. Ct. 2559 (2005). As the McReynolds court explained, "decisions about sentencing factors will continue to be made by judges, on the preponderance of the evidence, an approach that comports with the Sixth Amendment so long as the guideline system has some flexibility in application." Id. Similarly, the Tenth Circuit held that "in sentencing criminal defendants for federal crimes, district courts are still required to consider Guideline ranges, which are determined through application of the preponderance standard, just as they were before. The only difference is that the court has latitude, subject to reasonableness review, to depart from the resulting Guideline ranges." United States v. Magallanez, 408 F.3d 672, 685 (10th Cir.) (citation omitted), cert. denied, 126 S. Ct. 468 (2005). The Second Circuit reached the same conclusion in United States v. Garcia, 413 F.3d 201, 220 n.15 (2nd Cir. 2005): "Judicial authority

to find facts relevant to sentencing by a preponderance of the evidence survives Booker.... [A]fter Booker, district courts are still statutorily obliged to consider the Guidelines, which necessarily means they must determine the Guidelines range applicable to a particular defendant.  This task is to be performed in the same manner as before Booker."  Id at 220, n. 15.

This Court's decision to require a sentencing enhancement to be proved to a jury beyond a reasonable doubt has no support in the foregoing decisions, since it requires proof to the wrong factfinder applying the wrong standard of proof.  Nor does the United States believe that this Court has the authority to utilize the procedure it has proposed.  By statute, courts have authority to call jurors to sit on grand or petit juries.  28 U.S.C. §1861. A "petit jury" refers to a jury called to hear a trial.  See Black's Law Dictionary 768 (5th Ed.) (defining a "petit jury" as "[t]he ordinary jury for the trial of a civil or criminal action"). While the issue may have been uncertain prior to Booker, it is now clear that a sentencing proceeding under the advisory Guidelines is not a "trial" on the elements of crime.  Where, as here, the defendant has admitted guilt and the Court has accepted the plea, the jury statute does not authorize impanelment of a jury for the sole purpose of determining sentencing enhancements.[2]  Cf. United

---

[2] Although this Court's opinion in Green referred to Justice Thomas's Apprendi concurrence as supporting the use of sentencing

<u>States v. Exum</u>, 744 F.Supp. 803, 805 (N.D. Oh. 1990) (holding that federal judges are not authorized to call jurors for service on summary juries since such juries are not <u>grand</u> or <u>petit</u> juries).

The Federal Rules of Criminal Procedure also provide no authority for this procedure. To the contrary, the Rules require sentencing to be performed by the court. <u>See, e.g.</u>, Fed. R. Crim. P. 32(i)(3) (specifying actions that "the court must" take in sentencing). This conflict with the Rules cannot be solved, as the Court implies, by treating the findings of a sentencing jury as advisory. [1/9/2006:25]. Unlike the Civil Rules, the Criminal Rules contain no provision authorizing the use of advisory juries. <u>Cf.</u> Fed. R. Civ. P. 39(c).

Even if authority to convene a jury purely for sentencing purposes could be found in the jury statutes and Federal Rules, the Sentencing Act and the Sentencing Guidelines have now foreclosed that option. In <u>Booker</u>, the Supreme Court found as a matter of statutory construction that the Sentencing Act <u>requires</u> sentencing to be performed by a district court judge, "not 'the judge working together with the jury'." 125 S.Ct. at 759. Consistent with this

---

juries, that concurrence referred to the use of an <u>existing</u> jury to hear sentencing facts in a bifurcated proceeding, not the calling of a jury after the defendant has pled guilty. <u>See Apprendi</u>, 530 U.S. 466, 521 n.10 (2000). In any event, Justice Thomas's comments did not address the issue of whether such proceedings could be held under the jury statutes as currently drafted.

interpretation, the sentencing procedure set forth in the Guidelines authorizes the district court *alone* to perform fact finding with respect to sentencing enhancements. <u>Edwards</u>, 523 U.S. at 513-14 ("The Sentencing Guidelines instruct *the judge* in a case like this one to determine both the amount and kind of 'controlled substances' for which a defendant should be held accountable – and then to impose a sentence that varies depending upon amount and kind.") (emphasis in original).[3]

The <u>Booker</u> decision not only left the pre-<u>Booker</u> procedures intact, but made plain their centrality to the sentencing system Congress enacted. The Court found that Congress's goal of reducing sentencing disparity "depends for its success upon <u>judicial</u> <u>efforts</u> to determine, and base punishment, upon, the *real conduct* that underlies the crime of conviction." <u>Booker</u>, 125 S.Ct. at 759

---

[3] By requiring the government to prove enhancements beyond a reasonable doubt at a trial, this Court's ruling also appears to conflict with 18 U.S.C. §3661, which states:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

The requirement of a jury trial requirement under a reasonable doubt standard would create such a limitation, effectively negating evidence of conduct provable under a preponderance standard but not beyond a reasonable doubt. In addition, inclusion of sentencing facts at trial could subject this evidence to evidentiary rules and other procedural barriers.

(underlining added, italics in original).  The Booker Court concluded that a process that submitted sentencing facts to a jury would contravene that goal in numerous respects.  Among other faults, this procedure forces defendants to choose between contesting guilt and presenting evidence contesting the basis of specific enhancements, requires juries in many cases to resolve highly technical questions irrelevant to guilt or innocence and deprives a district court of the ability to impose a sentence that accounts for conduct occurring (or discovered) during or after the trial.  Id. 125 S.Ct. at 761-63.

As the First Circuit has stated in another case involving a district court's proposed modifications of federal jury requirements, "where Congress has provided a specific panoply of rules that must be followed, the district court's discretionary powers simply do not come into play." United States v. Green, 407 F.3d 434, 443 (1st Cir. 2005).  In the sentencing context, the relevant "rules" include those of Sentencing Commission, "which is allied with Congress in the important endeavor of calibrating sentences for federal offenses." United States v. Pho, 433 F.3d 53, 62 (1st Cir. 2006). Because this Court's sentencing proposal categorically departs from the procedures chosen by Congress and developed by the Commission,[4] the proposal constitutes reversible

---

[4] As the Court indicated at the January 9 hearing, its proposal does not respond to particular circumstances of this

legal error.  Id. at 63 (holding that "[a] district court's categorical rejection" of the crack to powder sentencing ratio established by Congress "impermissibly usurps Congress's judgment about the proper sentencing policy for cocaine offenses"); see also United States v. Croxford, 324 F.Supp.2d 1230, 1243 (D. Utah 2004)(rejecting the use of sentencing jury to address Blakely concerns as "problematic because it effectively requires courts to redraft the sentencing statutes and implementing Guidelines"); United States v. Grant, 329 F.Supp.2d 1305, 1308 (M.D. Fl. 2004) (same).[5]

Finally, the United States notes that this Court's unwarranted and unauthorized proposal would impose significant burdens, not only on the government, but on defendants, juries and the trial system.  It would require the prosecution and defense even in a plea-bargained case to prepare and present potentially complex concepts in a form a jury can understand, and to become involved in jury-related procedures, such as the selection of jurors and the

---

case but represents a "standing order" of this court that a person disputing sentencing enhancements "gets a trial." [1/9/2006:6].  The Court has followed this same approach in other cases, including United States v. Duverge, No. 05-CR-10265.  This reflects precisely the type of categorical divergence from the Guidelines considered in Pho.

[5] As both Croxford and Grant noted, this procedure also conflicts with provisions of the Federal Rules of Criminal Procedure, such as Rule 32(i)(3) which requires that "the court" shall resolve disputed sentencing matters.  See 324 F.Supp.2d at 1243 & n.66; 329 F.Supp.2d at 1308.

drafting of appropriate jury instructions.[6]  The result would sacrifice many of the efficiency benefits of resolving a case by guilty plea.  It also places additional, unnecessary demands on the jury system, by requiring the impanelment of juries to perform, or assist in performing, a function that Congress and the Commission have delegated to the district court judge.

For all of the foregoing reasons, the government requests reconsideration.

**CONCLUSION**

For these reasons, the United States respectfully requests that the Court reconsider and reverse its oral order of January 9, 2006, that disputed sentencing enhancements be proven beyond a reasonable doubt to a jury to be impaneled solely for this purpose.

                    Respectfully Submitted,

                    MICHAEL J. SULLIVAN
                    United States Attorney

          By:

                    /s/ Neil Gallagher

---

[6] In cases where a trial is taking place, the Court's ruling would raise different but no less significant concerns, including the introduction at trial of evidence that is unnecessary to the government's case in chief, but relevant to sentencing, special verdict forms that are unduly complex, and a process that (in the words of FRE 403) might confuse the issues, mislead the jury, and result in undue delay and waste of time.  These concerns were among those specifically identified by the Supreme Court in Booker as reasons for declining to engraft a jury trial requirement on a mandatory Guidelines system.  See 125 S. Ct. At 759-64.

                              NEIL J. GALLAGHER, JR.

                              RANDALL E. KROMM

                              Assistant U.S. Attorneys

                              (617) 748-3385

Dated:    February 10, 2006


                    Certificate of Service

     I hereby certify that this document filed through the ECF
system will be sent electronically to the registered participants
as identified on the Notice of Electronic Filing (NEF) and mailed
to all those not participating in ECF.


                              /s/ Neil J. Gallagher, Jr.
                                 Neil J. Gallagher, Jr.


                              -14-